## In re NEW ENGLAND BREEDERS' CLUB.

### (District Court, D. New Hampshire. January 6, 1910.)

### No. 1,253.

COURTS (§ 504*)—COMITY—ACTIONS AGAINST BANKRUPT—STAY—DISCRETION OF COURT.

　　Where a suit to establish a lien under a state statute against property of a corporation was pending before the Supreme Court of the state at the time of an adjudication in bankruptcy against the corporation, reasonable considerations of comity require, or at least authorize, the bankruptcy court to leave the question of the validity of the asserted lien to the determination of the state court, which is the appropriate tribunal to construe its statutes, and to direct the trustee to go there and present his case; the manner of carrying into effect the judgment of the state court, in case it upholds the lien, being a matter which may be determined after such judgment is rendered.

　　[Ed. Note.—For other cases, see Courts, Dec. Dig. § 504.*

　　Conflict of jurisdiction of federal courts with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

In the matter of the New England Breeders' Club, bankrupt. On motion to dissolve injunction, and motion by trustee to adjudicate lien. Injunction modified, and motion stayed.

See, also, 165 Fed. 517; 169 Fed. 586, 95 C. C. A. 84.

Geo. H. Warren, for claimant.

Henry F. Hollis, for trustee in bankruptcy.

ALDRICH, District Judge. This case comes up now upon two motions, as well as upon exceptions to the master's report. The Head & Dowst Company moves to dissolve the injunction, and the trustee

moves to have the validity of the Head & Dowst lien adjudicated in this court as an adverse claim.

April 19, 1909, and after the decision upon the jurisdictional question in the Circuit Court of Appeals (169 Fed. 586, 95 C. C. A. 84), a master was appointed to find material facts relative to the validity of the alleged Head & Dowst lien. Under a liberal construction of the order, the master gave a full hearing, and made findings both as to the merits of the alleged lien and the status of the lien suit pending in the state courts prior to the adjudication in bankruptcy.

I shall only consider at this time questions which relate to the finding in respect to prior pendency of the lien suit in the New Hampshire courts.

The proceeding against the Breeders' Club to secure and enforce an alleged lien for labor and materials was instituted in the superior court of the state December 24, 1906, in which judgment in rem was rendered for about $47,000, and insolvency proceedings under the state insolvency laws were instituted February 5, 1907, in the probate court, and an assignee was appointed.

Contrary to impressions tentatively expressed at the oral arguments, I have reached the conclusion that I ought to deny the application, at this stage of the proceeding, to adjudicate here the Head & Dowst claim, and decline to continue the injunction in its present form.

Apparently certain material questions, raised by exceptions and a reserved case from the superior to the Supreme Court of the state, as to the validity of the lien, have not been passed upon or even considered by the Supreme Court of New Hampshire, and apparently the final result reached there was based upon the failure of the parties to present their case in that tribunal, and apparently such failure resulted from a mistake or misunderstanding of the parties in respect to doubtful jurisdictional questions and other doubtful questions relating to the powers and duties of the different courts under the bankruptcy law. The merits of the alleged lien not having been determined upon consideration, but as upon default, which resulted from mistake or misunderstanding in respect to remedies and procedure relating to the same subject-matter pending in the two courts, nothing which is here said is to be accepted as a denial of the right of the federal court to deal with the alleged lien in case the parties shall fail in their efforts in the state courts to have their questions in respect to the amount and validity or invalidity of the alleged lien settled in the state courts upon a consideration of the merits. In view of the pending bankruptcy proceeding in the federal court in which a trustee has been appointed, quite likely the Head & Dowst Company should have resorted to the federal court for leave to cite the trustee into the proceeding pending in the state court rather than to compulsory process upon him from that court to that end, relying upon the idea, as they doubtless did, that the prior pendency of the lien proceeding in the state court relieved the federal bankruptcy court from all responsibility in respect to the question where the rights of the bankruptcy trustee should be adjudicated.

At the time this action was taken in respect to the process of the state court, the Head & Dowst Company was stoutly contending that,

the New England Breeders' Club being a corporation, and one not engaged to any extent in mercantile pursuits, its insolvent estate was not one within the purview of the federal bankruptcy law; and it is quite probable that the state court held that view. The counsel for the trustee stoutly contended for the contrary view. Upon application, and upon the theory that the Head & Dowst Company was seeking to establish a right in the state court which would operate as a fraudulent preference not countenanced by the federal law, the trustee sought a restraining order upon the Head & Dowst Company, which was granted without prejudice as to any question of jurisdiction, and subject to an application at any time for dissolution.

At a subsequent hearing, holding the view that the federal court was without jurisdiction, because the Breeders' Club was not principally or at all engaged in trading or mercantile pursuits, and that it was not a corporation whose insolvent affairs were within the bankruptcy law, I ordered the bankruptcy proceeding dismissed. This was done subject to exception; and, in order to hold the rights of the parties in respect to the alleged lien in statu quo, the execution of the order of dismissal was stayed pending review by the Circuit Court of Appeals. The order of dismissal was subsequently reversed by the Circuit Court of Appeals (In re New England Breeders' Club, 169 Fed. 586, 95 C. C. A. 84), and we therefore now have an estate with which we must deal under the federal bankruptcy law; none of the parties interested seeking to bring themselves within the conditions or qualifications, in respect to jurisdiction, expressed in the opinion of the Circuit Court of Appeals.

Until an authoritative decision upon the disputed jurisdictional points, the parties were necessarily at open sea in respect to their remedies. Acting upon the idea, as the trustee was, that the estate was one for federal bankruptcy adjudication, a contention which has been sustained by an authoritative court, he was probably right in not responding to the compulsory process invoked by the Head & Dowst Company to compel his attendance in the state court. But, whether he was right or wrong, the fact that he failed to appear, and for that reason that the state court declined to consider the exceptions and objections to the lien therein pending, furnishes no sufficient reason why the meritorious status of the alleged lien under the state law should not be determined by some court before a judgment in rem shall operate upon and absorb the entire bankrupt estate now in the custody of the federal bankrupt law. It would seem reasonable that the question where the rights shall be ascertained and established should be determined now as it would have been if, when it first arose, all parties and both courts had understood that the estate was one to be settled in the course of bankruptcy proceedings.

The lien in controversy, if there is one, results from the New Hampshire statute, and whether it is a valid lien which attaches itself to the real estate in question is to be determined by New Hampshire law. The question whether the lien does or does not attach in this particular case will quite likely involve consideration of decided cases of statutory interpretation and application to particular and perhaps

analogous situations by the courts of the state. The nature of the lien claim being such that, if there is a lien, it attaches by operation of law under a given statute, questions about it are peculiarly questions to be governed by local law. The trustee does not now urge any claim of fraudulent preference, and a lien like the one in question, if established, would not operate as such. Remington on Bankruptcy, § 1155, and cases cited. The only point now urged against the validity of the lien is nonfulfillment and willful abandonment of a written contract.

If it should be found that there is a decision by the highest court of the state which in fact and law would apply itself to a situation like this, or is so closely analogous as to apply by reasonable implication, it would have to be accepted as binding here. In other words, the federal court is bound to establish the rights of the parties according to the state law as interpreted by the state courts, and this, as said, is especially true in cases where the rights rest upon interpretations of local statutes.

The suit in the state court, which was one, according to the theory of the Head & Dowst Company, to establish, through proper procedure, a lien which had already attached itself by operation of law, was pending at the time of the adjudication in bankruptcy, and the property of the Breeders' Club was in the possession of an assignee appointed under the insolvency law of New Hampshire. Under such circumstances, and in the absence of a clear and imperative rule of federal bankruptcy law which requires it to be done, it would seem to be a judicial work of supererogation for the federal court to seize and hold a lien question like the one here, which must be decided according to local law as interpreted by the state courts, when the question is ripe for decision in a pending cause by a court of the state of competent jurisdiction.

An examination of the state and federal cases decided in the periods covered by the various bankruptcy acts discloses a vast field of discussion, and quite a degree of confusion and conflict, as to the respective powers and duties of the two courts; but, after all, it would seem to be safe to assume that there is no hard and fast rule which requires that all litigation pending in the state courts at the time of the adjudication in bankruptcy in respect to the property of the bankrupt estate shall be left for determination in that forum; neither, as it would seem, is there a hard and fast rule which requires a federal court to draw unto itself all litigation in respect to a bankrupt estate and as to property in the possession of the bankruptcy trustee. As the federal bankruptcy law is supposed to be the paramount insolvency law, and as the estate upon adjudication is understood to become an estate in custodia legis, it is quite possible that in the last analysis it might be found (except as to situations within the doctrine of Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403, and other cases cited in notes to section 1582, Remington on Bankruptcy) that the right or power to assume the responsibility of all litigation in respect to the assets of the bankrupt estate resides in the federal bankruptcy court. Still, if such extreme power exists, reasonable considerations of comity between the

two governments and the two courts, and a reasonable consideration of convenience to suitors, would doubtless, under reasonable judicial discretion, often require that it should not be exercised, and in the great majority of cases would leave local property rights, involved in litigation pending in state courts of general jurisdiction at the time of the adjudication in bankruptcy, to be ascertained and established in the state tribunal as the one most appropriate and best suited to the interests of all parties concerned.

Where there is concurrent jurisdiction, the court that first takes hold of the res in a controverted situation may hold the ground. If the extreme view were conceded, that federal law is supreme in the sense that, as it takes to itself the entire estate in bankruptcy, it may take with it all litigation, it of course cannot be said, in the strict technical sense, that the jurisdictions of the two courts are concurrent, yet in all substantial senses they are concurrent, and either is a suitable tribunal to deal with the subject-matter of a lien. It seems quite unnecessary in a situation like this to undertake to determine what might or might not be done in an extreme case. Courts are traditionally inclined to be cautious in dealing with questions tending in the direction of a conflict of jurisdiction. With our complex system of close relationship and responsibility between state and federal courts, under which the two courts are oftentimes and necessarily charged with responsibility in respect to the same subject-matter, the historical and traditional reasons for caution and comity are emphasized in a very decided degree.

It would seem that this question is one which may well be left with the local court which had jurisdiction of the subject-matter prior to the proceeding in bankruptcy. There would seem to be no doubt of the power of the bankruptcy court, on application or even without it, to direct the trustee to go there and present his case. See, as having more or less bearing upon different phases of the question presented, cases cited in notes to sections 1584, 1585, 1586, 1587, 1796, 1797, 1798, Remington on Bankruptcy. If the lien is valid, the trustee in bankruptcy takes the property subject to it. Whatever court takes hold of it, whether or not it is valid, and, if valid, to what amount, is something which must be determined under New Hampshire law. The exact and only question is the status of the lien under New Hampshire law. The parties are entitled to have that question passed upon by some suitable court. To reach the New Hampshire law upon a local question in respect to a local statute is the ultimate result to be attained, and what court could be a more appropriate or suitable exponent of the New Hampshire law upon such a question than the highest court of the state?

There is no occasion at this stage of the proceeding to consider under what process the judgment of the state court, if Head & Dowst shall succeed in securing one, shall operate upon the property in question—that is to say, whether a judgment in rem, if obtained, should be brought here in aid of the bankruptcy proceeding, or whether it should be left to the lienholder to execute the judgment under state process.

Let the order be: The injunction is so far modified as to permit the Head & Dowst Company to go before the proper court of New Hampshire, and take necessary steps to have all questions relating to the amount and validity of the alleged lien upon the bankrupt estate of the New England Breeders' Club determined upon their merits under the New Hampshire law; and the trustee in bankruptcy has leave, and is directed, to make all reasonable effort in the direction of having such questions established by that court. The motion of the trustee that the lien claim be adjudicated by this court is stayed for the present, and will await the result reached in the state court.