### In re AMERICAN FIDELITY CORPORATION, Limited.

No. 1372.

District Court, S. D. California, S. D.
July 24, 1939.

Weinberger & Miller, DeWitt A. Higgs, and Richard F. Kahle, all of San Diego, Cal., for Edwin A. Mueller, trustee in bankruptcy for Russell O. Jackson's Estate.

James B. Abbey, Dist. Atty., for San Diego County, and Wm. A. Glen, Deputy Dist. Atty., both of San Diego, Cal., for the State of California.

JENNEY, District Judge.

On January 29, 1938, an involuntary petition in bankruptcy was filed in this court by creditors against the American Fidelity Corporation, Ltd., a California corporation. An adjudication was entered March 7, 1938. The first meeting of creditors was held before Referee Stanley T. Howe at San Diego. The creditors divided into two principal factions over the appointment of a trustee. One faction, represented by attorneys Wylie and Stickney, voted for Lawrence Holzman. The other faction, represented by attorneys Weinberger and Miller, voted for Edwin A. Mueller. The referee decided that Mueller was the appointee of creditors holding the majority in number and amount of allowed claims and made an order approving his appointment, pursuant to the power conferred upon him by General Order No. XIII. Upon review, Judge McCormick of this Court, on May 12, 1938, affirmed this order of the referee.

There were also pending, at the same time and before the same referee, the bankrupt estates of Russell O. Jackson and Frank A. Scott, former officers, directors, and stockholders of the corporation. Prior to the three bankruptcies, Jackson and Scott had been indicted in San Diego County, California, for alleged violations of the California Corporate Securities Act (St.1917, p. 673, as amended). They were released on bail furnished by the Maryland Casualty Company, which company in turn required the deposit with it of $25,000 cash as indemnity. This money was actually paid over to it by Esther J. Jackson, the mother of Russell O. Jackson. Jackson and Scott were convicted in the criminal proceeding, voluntarily surrendered themselves, and were sent to the penitentiary. The sentence of Jackson included a fine of $15,000, and that of Scott a fine of $10,000.

On May 20, 1937, the state court issued a writ of execution upon these fines directed to the Maryland Casualty Company,

J. K. Stickney, Jr., and W. H. Wylie, both of San Diego, Cal., for petitioning creditors.

Sanders & LaMotte, of San Diego, Cal., and Cobb & Byrne, of Los Angeles, Cal., for alleged bankrupt.

Marie Herney, of San Diego, Cal., for Hal G. Hotchkiss, trustee.

Dempster McKee, of San Diego, Cal., for Lawrence Holzman, trustee in bankruptcy for Frank A. Scott's Estate.

which was served by the sheriff of Los Angeles County on May 21, 1937. An alias writ of execution was issued January 5, 1938,—apparently as a precautionary measure in the event the original levy was invalid for any reason. Both writs were returned by the sheriff unsatisfied. On January 10, 1938, the Maryland Casualty Company, answering the alias writ, stated that it did not know who owned the indemnity money.

On the same date, January 10, 1938, the district attorney of San Diego County commenced a civil action in the Superior Court of that county, entitled, "State of California vs. Maryland Casualty Company, Russell O. Jackson and Frank A. Scott." The purpose of this suit was to ascertain the ownership of the money deposited with the Maryland Casualty Company, and to enforce, as against the fund, the liens of the State of California created by the levy of the writs of execution. The complaint in this suit prayed, (1) for judgment in the amount of the fines, plus interest; (2) for an order enjoining the Maryland Casualty Company from disposing of the funds until the final order of the court; and (3) for an order, bringing into said court and making parties to the action, all persons claiming any interest in the fund. On February 9, 1938, the Maryland Casualty Company filed its answer and cross-complaint admitting that it had on hand the $25,000, disclaiming any interest therein, and alleging that various persons claimed an interest in that fund, including Francesca Jackson, Esther J. Jackson, Ralph Jackson, the American Fidelity Corporation, Ltd., and certain creditors of the bankrupt estate of that corporation. Thereupon certain creditors of the American Fidelity Corporation, that corporation on its own behalf, Russell O. Jackson, Frank A. Scott, Francesca Jackson, Esther J. Jackson and Ralph Jackson likewise appeared in this suit by way of answer, denying that the money in question was the property of Russell O. Jackson and alleging that the same was the property of Esther J. Jackson, Francesca Jackson and Ralph Jackson, relatives of Russell O. Jackson. These appearances were all made after the commencement of the bankruptcy proceedings against the American Fidelity Corporation, but were prior to its adjudication as a bankrupt.

Thereafter Edwin A. Mueller, as trustee in bankruptcy of the American Fidelity Corporation, with the consent of the referee in bankruptcy, appeared and filed an answer in this civil suit. Subsequently the same Edwin A. Mueller, as trustee in bankruptcy for Russell O. Jackson, also with the consent of the referee in bankruptcy, appeared and filed another answer. Mueller, as trustee, thus intervened and became a party to the suit on behalf of two bankrupt estates. Both interventions were made by him through the same counsel. In each answer Mueller alleged under oath that the particular estate for which he was then appearing owned the fund; that is, he alleged under oath, on the one hand, that the bankrupt estate of American Fidelity Corporation owned the fund and, on the other hand, that the bankrupt estate of Russell O. Jackson was the owner.

On May 4, 1938, creditors of the American Fidelity Corporation filed a petition in this District Court of the United States, asking for an injunction to restrain prosecution of the state court suit brought to determine title to the fund. The grounds alleged were that (1) the state court did not have jurisdiction over the subject matter of the suit, (2) the bankruptcy court had exclusive jurisdiction, (3) a plenary suit was unjustified, and (4) the matter should be disposed of by a summary proceeding in the bankruptcy court.

On May 4, 1938, Judge McCormick of this District Court issued an order to show cause and temporary restraining order, enjoining the state court proceedings until the further order of this court. On May 6, 1938, the State of California filed a petition to modify the restraining order, upon the grounds: (1) That the State had levied an execution on the fund on May 21, 1937, and had thus acquired a lien thereon more than four months prior to the bankruptcy of the American Fidelity Corporation; (2) that the trial of the state court suit to determine title to the fund was set for May 17, 1938; and (3) that unless the trial was promptly held the State might lose the benefit of its execution lien. (Under the state law the writ of execution would not be a lien after May 21, 1938, one year from the date of its levy. Code Civ.Proc.Cal. § 688). On May 12, 1938, a minute order was made by Judge McCormick granting the modification of the restraining order requested by the state. On May 12, 1938, an answer to the petition for injunction was filed by the state. On the same day certain creditors

of the bankrupt estate of American Fidelity Corporation filed an amended petition for an injunction restraining the prosecution of the state court suit. On that day also certain creditors filed an answer to this amended petition for injunction.

On May 20, 1938, Judge McCormick issued a formal written order dissolving the temporary restraining order and providing that the parties could proceed to prosecute the state court suit to final judgment, except that no party other than the trustee in bankruptcy of the American Fidelity Corporation should procure any execution on any judgment rendered in the state court suit until a full report of all proceedings in the state court had been made to the federal court and full opportunity given to all parties to be heard. Judge McCormick, in this formal written order, expressly reserved "the right of reviewing said proceedings in said action on the question of jurisdiction of the parties and the subject matter involved in said action, * * *" He further stated that if the bankruptcy court found, upon such further hearing, that execution should not issue, an order prohibiting the parties to the action from securing such a writ would issue out of the bankruptcy court.

On October 20, 1938, a report of the state court proceedings was filed in the American Fidelity Corporation bankruptcy proceeding by Mueller, as trustee. This report showed that the state court suit had been tried May 17, 1938, before Judge Griffin, of the Superior Court of San Diego County. It disclosed that during the trial, Mueller, as trustee in bankruptcy of the estate of American Fidelity Corporation, had represented that the books and records of the bankrupt corporation were in the possession of the United States Bureau of Internal Revenue and were unavailable for study by the trustee. A motion for continuance, the report showed, had been denied and the trial of the case had been finished in the Superior Court on May 18, 1938. The report further showed that on May 19, 1938, the Superior Court had rendered its judgment in favor of the State of California to the extent of giving a lien upon the fund in the sum of about $15,000, but had directed that the entire fund be paid over to the bankrupt estate of Russell O. Jackson as its property, subject to the lien of the State of California. Motions for a new trial in the Superior Court were made and denied.

Thereafter Mueller, as trustee in bankruptcy of the estate of American Fidelity Corporation, substituted as his attorneys in all matters, including the Superior Court suit, Edward Kelley and Marie M. Herney in the place of Weinberger & Miller, DeWitt A. Higgs, and Richard Kahle. Mueller, however, retained the latter counsel as his attorneys in the Jackson bankruptcy estate. After the state court judgment, Mueller resigned as trustee in bankruptcy of the American Fidelity Corporation and was succeeded by Hal Hotchkiss. The latter employed as his attorneys Edward J. Kelley and Marie M. Herney. The judgment of the state court in due time became final through lack of appeal.

Trustee Mueller, in this report of October 20, 1938, in the American Fidelity Estate, requested that the Federal court make an order that the American Fidelity estate had no interest in the fund and that the fund was the property of the Jackson estate, and further that the injunction issued by Judge McCormick be dissolved. At the same time the State of California filed a like petition for dissolution of the injunction and for an order directing Mueller, as trustee of the Jackson estate, to pay the State of California the $15,000 covered by its lien.

All other interested parties appeared and contested the pending applications. The main contentions of the opposing parties are these:

Those seeking to prevent the dissolution of the injunction maintain:

(1) The bankruptcy court had exclusive jurisdiction over the subject matter of the state court suit, through its actual or constructive possession of the res, and did not have power to surrender that jurisdiction and permit the state court suit to proceed.

(2) The state court judgment is void upon its face and should be disregarded by the bankruptcy court, because (a) the complaint in the suit does not state a cause of action; and (b) the writs of execution were irregularly issued and levied, and no liens upon the fund were created thereby. This being so, the judgment should be disregarded as a nullity.

Those desiring the dissolution of the injunction maintain:

(1) The bankruptcy court, while it had exclusive jurisdiction to control the ad-

ministration of the bankrupt estate, did not have exclusive jurisdiction over the res because it had neither actual nor constructive possession thereof, and the state court had, at least, constructive possession of the res.

(2) Even though the bankruptcy court had actual or constructive possession of the res, still the bankruptcy court, in its discretion, had the power to permit the trial in the state court of title to the same.

(3) Even though the state court judgment is defective upon its face, either because the complaint fails to state a cause of action, or because the writs of execution were irregularly issued and levied and no liens upon the funds were created thereby, these are matters which were concluded by the judgment, when it became a finality through lack of appeal. The only remedy of the complaining parties is some form of an equitable action, by way of a bill of review, to set aside the judgment, in a state or federal court which would have jurisdiction over the parties and the subject matter, regardless of the bankruptcy.

The basic principles in this controversy, as far as the jurisdiction of the bankruptcy court is concerned, appear to be these:

■ I. The bankruptcy court has summary jurisdiction to determine claims against, title to, and liens upon property in the actual or constructive possession of the bankruptcy court by and through its officers, such as receivers and trustees, and by and through the bankrupt himself, whether that possession existed at the commencement of the bankruptcy proceeding or arose subsequently. This jurisdiction cannot be disturbed by the processes of other courts. All property in the actual or constructive possession of the bankrupt, in which he claims an interest, passes upon the filing of the petition in bankruptcy, into the custody of the bankruptcy court. To protect its jurisdiction from interference, that court may issue an injunction and determine, preliminarily, all questions concerning possession; and, for that purpose, may even go into the merits of the controversy to determine whether or no the bankruptcy court has acquired possession, actual or constructive. Orinoco Iron Co. v. Metzel, 6 Cir., 230 F. 40, 36 A.B.R. 247; Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215, 22 A.B.R.,N.S., 661; Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct.

270, 75 L.Ed. 645, 17 A.B.R.,N.S., 273; Hebert v. Crawford, 228 U.S. 204, 33 S.Ct. 484, 57 L.Ed. 800, 30 A.B.R. 24; Board of Trade of Chicago v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533, 2 A.B.R.,N.S., 528; In re Bake-Rite Consolidated, D.C.N. D., Cal., 12 F.2d 468, 6 A.B.R.,N.S., 503; Ex Parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020, 24 A.B.R.,N.S., 487. As stated, the possession may be constructive as well as actual. Constructive possession occurs where the property (1) is in the physical possession of the bankrupt at the time of the filing of the petition but is not delivered by him to the receiver or trustee, or (2) is delivered to the receiver or the trustee but thereafter is wrongfully withdrawn from his custody, or (3) is in the hands of the bankrupt's bailee or agent, or (4) is held by some other person who makes no claim to it, or (5) is held by one who makes a claim which is not substantial and is colorable only. Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S. Ct. 396, 68 L.Ed. 770, 2 A.B.R.,N.S., 912; In re Tax Service Ass'n of Illinois, 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100; Gamble v. Daniel, 8 Cir., 39 F.2d 447, 15 A.B. R.,N.S., 499. In re Quan Weing, 2 Cir., 1939; 104 F.2d 112.

■ II. Where, however, the property in controversy was in the actual or constructive possession of a third person at the time of the commencement of the bankruptcy, which third person asserts a substantial and not merely a colorable adverse claim (even though such claim may possibly be fraudulent), the bankruptcy court does not have summary jurisdiction unless the adverse claimant consents thereto. In re Cadillac Brewing Co., 6 Cir., 102 F.2d 369. In these circumstances, any claim to the property by the receiver or trustee in bankruptcy must be decided in a plenary suit in a court of competent jursidiction— state or federal. Taubel-Scott-Kitzmiller Co. v. Fox, supra; May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870, 5 A.B.R.,N.S., 739; Harrison v. Chamberlain, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897, 7 A.B.R.,N.S., 719; Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433.

■ III. The Supreme Court of the United States has held in several cases that the exclusive jurisdiction of the bankruptcy court to control the administration of the estate cannot be surrendered to another court. United States Fidelity &

Guaranty Co. v. Bray, 225 U.S. 205, 32 S. Ct. 620, 56 L.Ed. 1055, 28 A.B.R. 207; Gross v. Irving Trust Co., supra; Isaacs v Hobbs Tie & Timber Co., supra. However in the Isaacs v. Hobbs Tie & Timber Co. case, the general statement is limited by the words, "save by consent of the bankruptcy court". [282 U.S. 734, 51 S. Ct. 272, 75 L.Ed. 645, 17 A.B.R.,N.S., 273.] In the later case of Ex Parte Baldwin, supra, there is a statement by the Supreme Court which, although obiter dictum, indicates that the court considers that this rule should be construed in the light of the saving clause above referred to in Isaacs v. Hobbs Tie & Timber Co., supra.

The Baldwin case was a proceeding under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, relating to railroad reorganizations. After a petition for the reorganization of the Missouri Pacific Railroad had been filed, an action was commenced in a state court of Texas, without the permission of the bankruptcy court, to try title to property in the actual possession of the trustees in the reorganization proceeding. By leave of the Supreme Court, a petition was filed in that court by the trustee asking for a writ of mandamus, directing the federal court for Southern Texas to take jurisdiction of a petition for removal from the state court of this suit in which the trustees were defendants. The petition was denied upon the ground that the extraordinary remedy of mandamus should not be granted where the trustees could, by the common remedy of injunction, prevent any interference with the jurisdiction of the bankruptcy court. In concluding its opinion, the Supreme Court said, speaking through Mr. Justice Brandeis [291 U.S. 610, 54 S.Ct. 555, 78 L.Ed. 1020, 24 A.B.R.,N.S., 487]: "Moreover, the bankruptcy court might, in the exercise of its discretion, conclude that it is desirable to have the litigation proceed in the state court", and cited a number of cases in support of this doctrine in its Note No. 12. This view is consonant with other expressions of the Supreme Court of the United States indicating, in analogous cases involving the surrender of state sovereignty, that it is of the essence of such sovereignty to be able to consent to limitations upon its governmental powers. United States v. Bekins, 304 U.S. 27, 51, 58 S. Ct. 811, 82 L.Ed. 1137. Here it is the very quintessence of exclusive jurisdiction for the Federal court to be able to permit the state court to try a certain issue when it feels that the state court is in a better position to determine the same expeditiously. This does not mean that there has been a relinquishment of exclusive jurisdiction over the administration of the estate by the bankruptcy court, within the meaning of the cases above cited. Nor does it question that there are certain administrative functions which by their very nature are not capable of delegation.

IV. If the bankruptcy court, in the light of the pronouncement of the Supreme Court in the Baldwin case, and particularly the last sentence thereof, allows the trustee in bankruptcy to intervene and participate in a state court suit, to determine title to property which is either in the actual or constructive possession of the bankruptcy court, or permits a trustee to remain a party to such action after he has already intervened or been made a party thereto, the trustee is bound by the decision of the state court. As stated by Mr. Justice Reed in the recent case of Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 138, 83 L.Ed. 104 (rehearing denied 305 U.S. 675, 59 S.Ct. 250, 83 L.Ed. ——): "It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first." See, also, Virginia Iron, Coal & Coke Co. v. Olcott, 4 Cir., 197 F. 730, 28 A.B.R. 321; In re New England Breeders' Club, D.C.N. H., 175 F. 501, 23 A.B.R. 689, affirmed Hobbs v. Head & Dowst Co., 1 Cir., 184 F. 409, 26 A.B.R. 63; Litton v. Pepper, 4 Cir., 100 F.2d 830, 38 A.B.R.,N.S., 454; Remington on Bankruptcy, 4th Ed., Sec. 2328–50; Van Zandt v. Parson, 81 Or. 453, 159 P. 1153, 37 A.B.R. 768.

Furthermore in the case at bar, it is doubtful if the bankruptcy court, in the matter of the American Fidelity Corporation, a bankrupt, ever had actual or constructive possession of the res. The money was not in the actual possession of the bankrupt corporation at the time of the filing of the involuntary petition in bankruptcy, nor did it ever thereafter come into the actual possession of such bankrupt or its trustee in bankruptcy. The most that

can be said is that the money may have been, at the time of the filing of the petition in bankruptcy, in the constructive possession of the bankrupt corporation, upon the theory that it was in the hands of the bankrupt's bailee or agent, to-wit, Maryland Casualty Company, which surety company did not claim any adverse interest in the money. Taubel-Scott-Kitzmiller Co. v. Fox, supra. The same theory might also be invoked to show that its trustee in bankruptcy had constructive possession of the money. However the bankrupt corporation apparently took no part in the transaction in which this money was deposited with the surety company as indemnity. We are also confronted with the fact that the first execution lien on the fund was created more than four months prior to the bankruptcy of the corporation. From the case of In re Maier Brewing Co., 9 Cir., 65 F.2d 673, 23 A.B.R.,N.S., 574, it would appear that the state court may have acquired thereby at least constructive possession of the fund. It would also appear from that case that the same result would follow from the levy of the alias writ of January 5, 1938, which was within four months of the bankruptcy, even though American Fidelity owned the fund, if as a matter of fact it was solvent on that date. There is no evidence in the record to show that it was not then solvent. Cf. Herman v. Henley, 7 Cir., 101 F.2d 365. We therefore cannot safely adopt, as a conclusive premise, the theory that this fund was ever in the actual or constructive possession of the bankruptcy court in the estate of American Fidelity Corporation.

■ We come now to an interpretation of Judge McCormick's injunction order issued on May 20, 1938. It is not to be presumed from the wording of that order that the distinguished judge intended to reserve to the bankruptcy court the right to review the facts as well as the question of jurisdiction. It would seem a futility for the federal court to place upon the trustee in bankruptcy the burden of going through litigation in the state court and then hold that the federal court will act as a reviewing court and try the facts all over again. When the matter was presented to Judge McCormick an emergency existed. Apparently the State of California had to go to trial immediately or by reason of the lapse of time it might lose the benefit of its execution lien of May 21, 1937. The bankruptcy court was in no position to try title

to this fund immediately. In the first place no application for that purpose had been made, no pleadings had been filed, no issue had been framed. In the second place, the term of the district court in San Diego was expiring. If the controversy was to be tried at all before the expiration of the year's period from the date of the execution of May 21, 1937, was levied, then it had to be tried immediately in the state court. There was not then sufficient time for Judge McCormick to review the facts and the law and determine this very difficult question of jurisdiction.

It is apparent that what the Judge intended was this: To allow the State of California, in order to protect its interests under the circumstances, to go ahead with its suit in the state court. Then, upon the conclusion of that suit, to come back into the federal court and to have determined at that time the question of whether or no the federal court had, in fact, the power to permit the state court to proceed in the first instance. It is to be noted that the cases of Gross v. Irving Trust Co., United States Fidelity & Guaranty Company v. Bray, and Isaacs v. Hobbs Tie & Timber Co., all supra, support the principle that, in its control of the administration of an estate, the jurisdiction of the bankruptcy court is so exclusive that it cannot be surrendered to any other court. However in the Isaacs v. Hobbs Tie & Timber Co. and the Baldwin cases the Supreme Court indicated that, while the bankruptcy court had exclusive jurisdiction to control the administration of the bankrupt estate, it had the right, in the exercise of its discretion, to permit a state court to try title to property in the actual or constructive possession of the bankruptcy court. Those cases fully justify the action taken here in permitting the state court to proceed,—particularly when it is doubtful if the bankruptcy court had such possession.

There are other instances in which the bankruptcy court has followed the theory of the Isaacs v. Hobbs Tie & Timber Co. and Baldwin cases, particularly with respect to the foreclosure of mortgages and deeds of trust on property in the actual or constructive possession of the bankruptcy court. Where there appears to be no equity in such property, the bankruptcy court has frequently permitted outside foreclosure. In re Schulte United, Inc., 2 Cir., 49 F.2d 264, 18 A.B.R.,N.S., 145; Comer v. John Hancock Mutual Life Ins.

Co., 8 Cir., 80 F.2d 413, 30 A.B.R.,N.S., 176; In re Kirkpatrick, D.C.Cal., 17 F. Supp. 56, a decision by Judge Yankwich of this court; Title & Trust Co. v. Wernich, 9 Cir., 68 F.2d 811, 25 A.B.R.,N.S., 86; Hobbs Tie & Timber Co. v. Isaacs, 5 Cir., 61 F.2d 1006, 22 A.B.R.,N.S., 90. So, too, the bankruptcy court may, in its discretion, direct the settlement of unliquidated claims by litigation in the state courts. Farish Co. v. South Side Trust Co., 3 Cir., 281 F. 825, 49 A.B.R. 35. (These cases arose under the old Section 63b of the Bankruptcy Act, 11 U.S.C.A. § 103(d). The new Section 57d, 11 U.S.C.A. § 93(d), seems to give the same power as the old section 63b.) In the case of Heffron v. Western Loan & Bldg. Co., 9 Cir., 84 F.2d 301, 112 A.L.R. 501, 31 A.B.R., N.S., 489, our Circuit Court held that the foreclosure, out of court, of a deed of trust upon property in the actual or constructive possession of the Bankruptcy Court was not necessarily void, in the absence of an injunction issued by the bankruptcy court to prevent the foreclosure.

We must conclude, therefore, that the bankruptcy court had the power to permit the state court suit to proceed. Since there was no appeal, the judgment of the state court is res judicata as to all parties to that suit, including the trustee in bankruptcy of the American Fidelity Corporation, unless that judgment is void upon its face.

We come now to a consideration of the judgment itself. If it is void upon its face it can be disregarded, and this court may proceed regardless of the judgment.

A domestic judgment is void upon its face when it appears, from an inspection of the judgment roll, that the court rendering the judgment did not have jurisdiction over the parties or the subject matter of the suit. Ex parte Cohen, 107 Cal.App. 288, 290 P. 512; Donegan v. City of Los Angeles, 109 Cal.App. 673, 293 P. 912; Hogan v. Superior Court, City and County of San Francisco, 74 Cal.App. 704, 241 P. 584; In re Behmeyer, 130 Cal.App. 200, 19 P.2d 829. A judgment absolutely void may be attacked anywhere, directly or collaterally, by parties or strangers. It is a nullity and can be neither a basis for nor evidence of any right whatever. Estate of Pusey, 180 Cal. 368, 374, 181 P. 648.

Jurisdiction over the parties and the subject matter necessarily involves power to decide incorrectly as well as correctly a controversy. Jurisdiction does not depend upon the correctness of the decision made. When a court having jurisdiction of the parties and the subject matter commits error in its final decision, such error is corrigible, not through collateral attack but by appeal. In re Sargen, 135 Cal.App. 402, 27 P.2d 407. When a court has jurisdiction its judgment is res judicata,—between all parties, as to all issues.

"The doctrine of res judicata is one of repose. It rests on two maxims: 'A man should not be twice vexed for the same cause,' and 'It is for the public good that there be an end of litigation.' A fact or issue once finally determined on the merits by a court of competent jurisdiction may not again be put in issue in any subsequent litigation between the same parties or their privies." Carter v. Monterey County Trust & Savings Bank, 3 Cal.App.2d 648, 654, 38 P.2d 583, 586.

In the case at bar, the state court had jurisdiction over the parties and the subject matter of the action. Its judgment is now res judicata between all the parties to that suit, and as to all issues raised and decided therein. The issues decided by the state court were (1) the sufficiency of the complaint, (2) the sufficiency of the levy of the writs, (3) the validity of any liens created thereby, and (4) the title to the fund. There having been no appeal, it is now a final judgment of a court of competent jurisdiction. Even if the complaint failed to state a cause of action or the writs were irregularly issued and the liens void, such irregularities were swallowed up in the judgment.

As a matter of fact, however, the complaint does state a cause of action, upon the theory either of a creditors' bill or of a suit to quiet title to personal property (Code Civ.Proc.Cal. § 738). It is to be noted that while the code section referred to is entitled, "Action to quiet title to real and personal property", it reads that: "An action may be brought by any person against another who claims an estate or interest in real or personal property, adverse to him, for the purpose of determining such adverse claim * * *." So, here, the writs of execution in this case may have created a lien upon the fund, or a charge upon whatever interest Russell O. Jackson had in the fund, or may have indicated a mere right to hold the Maryland Casualty Company liable for the fund as the property of Jackson. Steineck v.

Haas-Baruch Co., 106 Cal.App. 228, 288 P. 1104, 1105. In any event the State of California had the right to commence in the state court its suit to determine adverse claims. Complainants have argued that a demurrer could have been sustained to the state's complaint upon the ground that it failed to follow the proceedings supplemental to execution provided by Code Civ.Proc.Cal. § 720 et seq., or that it had failed to allege the necessary prerequisites for the filing of a creditor's bill. Those objections, however, were not raised in the state court suit by demurrer or otherwise, and the finality of that judgment cured any irregularity in that regard.

The sufficiency of the pleadings was one of the matters of which the state court had jurisdiction. Its determination with reference thereto was not void, even though it may have been erroneous—because of an insufficient presentation of the legal problem involved, or for any other reason. 15 Cal.Juris. 86, Sec. 160; Associated Oil Co. v. Mullin, 110 Cal.App. 385, 294 P. 421; Le Mesnager v. Variel, 144 Cal. 463, 77 P. 988, 103 Am.St.Rep. 91.

■ In any event, a federal court has no power to interfere with a state court judgment, even though void on its face, unless the federal court otherwise has jurisdiction over the parties just as though there had been no bankruptcy proceedings. In such circumstances it is necessary that a complaint be filed in the nature of a bill to review the judgment upon the ground of fraud, accident, surprise, mistake, or the like. Le Mesnager v. Variel, supra. The proceeding now before this court is not of such nature. There having been no appeal and no properly grounded suit collaterally attacking the validity of the judgment of the state court, that judgment is now a final determination by a court of competent jurisdiction.

■ Those seeking the continuance of the injunction order also contend vigorously that Trustee Mueller, and his counsel, represented conflicting interests at the trial in the state court suit, and favored the Jackson estate over the American Fidelity estate. That is a matter with which this court is not now concerned. So far as the bankruptcy proceeding is concerned: if the American Fidelity estate has suffered loss, by reason of any inadequate defense of its rights through fault of its trustee or his counsel, that is a matter to be presented before the referee in bankruptcy upon the consideration of the trustee's account. If actual loss is shown, the referee has ample power to surcharge the trustee to the extent of the loss. The referee, also, has power to limit the compensation of trustee's counsel, or deny them any compensation at all. These matters may then properly come before this court for consideration upon a review of the order of the referee. So far as the state court suit is concerned, any possible question of fraud involving the trustee is not properly before this court in this proceeding.

■ One further matter, vigorously presented, requires consideration. Since there has been a trustee acting in this case throughout, it is doubtful if creditors of the estate have the right, without express permission of this court, to participate and be separately heard in these proceedings. The function of the trustee in bankruptcy is to represent and act on behalf of all of the creditors in all matters involving the administration of the estate. Oliver v. Hilgers, 88 Minn. 35, 92 N.W. 511, 11 A.B. R. 178; McLean v. Mayo, D.C.N.C., 113 F. 106, 7 A.B.R. 115, 116; In re Ducker, 6 Cir., 134 F. 43, 13 A.B.R. 760, 769. He primarily represents the unsecured creditors, and represents the secured creditors only in his capacity as a custodian of the property upon which they have a lien. Remington on Bankruptcy, 3rd Ed., Sec. 1113. He is not to be dictated to by creditors and should follow his own best judgment, even in determining what appearances he should make. As said in the case of In re Columbia Iron Works, D.C.Mich., 142 F. 234, 237, 14 A.B.R. 526:

"Equally removed from the interference of the creditors is the action of the trustee, so long as that officer shall act with fidelity to his trust. He is chosen to represent all the creditors * * * Subject to the control of the court and statutory limitations, the entire administration of the trust estate is in his hands. He cannot, therefore, yield his judgment to that of a majority of the creditors, merely because they are a majority, without a breach of his trust. To thus abdicate his duties is to make himself a mere passive trustee. It is proper that he should consult with the creditors upon important matters and get the benefit of their knowledge and experience, but the responsibility of decision rests upon him."

It would indeed be intolerable and make impossible the orderly administration of

bankrupt estates, if creditors were allowed to intervene and participate in matters of litigation of which the trustee has charge, under the supervision and control of this court. If the bars were let down, each creditor might conceivably appear separately to be heard; thus invoking a flood of proceedings which would engulf the time of the Federal court and make efficient functioning most difficult. See, In re Patterson MacDonald Shipbuilding Co., 9 Cir., 288 F. 546; Foreman v. Burleigh, 1 Cir., 109 F. 313, 6 A.B.R. 230; Chatfield v. O'Dwyer, 8 Cir., 101 F. 797, 4 A.B.R. 313; In re Mexico Hardware Co., D.C.N. M., 197 F. 650, 28 A.B.R. 736; In re Arti-Stain Co., D.C.Mass., 216 F. 942, 32 A.B.R. 640; In re Honesdale Union Stamp Shoe Co., 3 Cir., 102 F.2d 372; Cf. In re Roche, 5 Cir., 101 F. 956. It is pointed out in those cases that if the trustee fails to do his duty, any interested creditor may make demand upon him for appropriate action, and if he fails to act promptly, the creditor may, with permission of the court, act on behalf of the estate and in the name of the trustee. In such instance, the court may feel disposed to require indemnity of the creditor against costs, or may charge the costs against him if he is unsuccessful; but in any event he acts with the consent of the court. Ohio Valley Bank Co. v. Mack, 6 Cir., 163 F. 155, 24 L.R.A.,N.S., 184, 20 A.B.R. 40; McDaniel v. Stroud, 4 Cir., 106 F. 486, 5 A.B.R. 685; Cf. Forsher v. Graham, 6 Cir., 32 F.2d 654, 14 A. B.R.,N.S., 29.

In the case at bar, there were so many important considerations, and so many extraordinary situations, that the court felt inclined to relax the general rule and has permitted creditors to participate. Their counsel have acted, more or less, as amici curiæ, and their briefs have been helpful to the court in attempting to arrive at a correct solution of the problems presented.

The motion to dissolve the injunction should be granted. This will permit the administration of the American Fidelity and the Jackson estates to proceed in the normal manner. Counsel for the State of California will prepare an appropriate form of order and submit the same to the other counsel for approval as to form, pursuant to Rule No. 8 of this court. Thereafter the order may be presented to the court for signature, filing, and entry.

It is so ordered.