**In the Matter of WIRE CLOTH ENTERPRISES, INC., Debtor.**

**Bankruptcy No. 75–1060.**

United States Bankruptcy Court, W. D. Pennsylvania.

June 2, 1982.

Allen Brunwasser, Pittsburgh, Pa., for debtor.

Edmund K. Trent, Pittsburgh, Pa., for claimant.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is Wire Cloth Enterprises, Inc., 75–1060; a petition filed in 1975 under Chapter XI of the Bankruptcy Act. The issue presented herein involves a claim for pre-petition legal fees incurred by counsel for the debtor in a prior state court receivership proceeding. The Court is asked to determine the forum in which the disputed and unliquidated claim for legal fees can most expeditiously be liquidated.

The case at bar has a long and complicated history. The Petition for Arrangement under Chapter XI of the Bankruptcy Act was filed in 1975, prior to the enactment of the Bankruptcy Code. Accordingly, the provisions of the Bankruptcy Act are controlling.

The claim for pre-petition legal fees arises out of the following events. Wire

Cloth Enterprises, Inc., is a business engaged in the purchase and resale of wire cloth and other products used in the screen printing business. In November, 1974, one of Wire Cloth's creditors filed a petition in the Court of Common Pleas of Allegheny County which resulted in the appointment of a receiver. Shortly thereafter, the Court of Common Pleas ordered the immediate liquidation of Wire Cloth Enterprises, Inc. Subsequently, the Superior Court of Pennsylvania ordered a stay of liquidation, and directed the continuation of the business. Wire Cloth was represented by Attorney Edmund Trent, of the law firm of Reed, Smith, Shaw and McClay, hereinafter "Reed Smith", during the state court proceeding.

On December 22, 1975, Mr. Trent filed a Petition for Arrangement under Chapter XI of the Bankruptcy Act in the United States District Court for the Western District of Pennsylvania on behalf of Wire Cloth. The petition alleged that the state court receivers had impeded the profitable operation of the business, and prayed for injunctive relief. On December 24, 1975, Judge Louis Rosenberg appointed two receivers and trustees with full power to conduct and administer the business. On December 7, 1976, the co-receivers submitted two plans of arrangement. Attached to both was a summary of debtor's liabilities, wherein the claim of Edmund Trent for legal services was listed as follows: "to be held in abeyance until disposition of other creditors' claims." Neither plan provided for the retention of jurisdiction. Plan B was accepted by the majority of creditors both as to number and amount, including Edmund Trent on behalf of Reed Smith. On January 17, 1977, the Court confirmed Plan B, which provided for payment of all unsecured creditors (with the exception of one creditor not a party herein) in full satisfaction of all claims on the basis of 75% of indebtedness within thirty days of confirmation of said arrangement.

On February 15, 1978, the case was referred to this Court for further consideration and disposition. Edmund Trent and Craig Jones, of Reed Smith, filed an application for compensation and reimbursement, alleging the following fees for legal services rendered:

| | |
|---|---|
| Prior to November, 1974 | $ 9,340.00 |
| January 1, 1975 to June 28, 1975 | $12,842.95 |
| June 30, 1975 to September 16, 1975 | $ 6,767.55 |
| September 16, 1975 to November 30, 1975 | $ 1,981.50 |
| December 1, 1975 to February 28, 1977 | $17,617.65 |

Wire Cloth filed an objection to the petition, alleging that the debtor did not actually retain Reed Smith during the state court receivership. Rather, Reed Smith entered the proceeding to protect fees already owed.

On November 2, 1978, a hearing was held on Mr. Trent's petition for counsel fees incurred during the Chapter XI proceedings. This Court found that the fair and reasonable fee for post-petition legal services rendered was $12,386.07, and directed payment of the same as part of the administration of the estate.

On December 22, 1978, the Court entered an order discharging the receivers, and on March 21, 1978, the estate was closed.

Some months later, Reed Smith moved for the reinstatement of the receivers, and for specific performance of a settlement agreement allegedly reached by Reed Smith and the debtor for payment of the pre-petition legal fees.

In its motion, Reed Smith alleges the existence of pre-petition legal fees in the amount of $39,108.40; or $29,331.13 on the basis of 75% payment of unsecured debts as provided for in Plan B. Reed Smith alleges that it entered into an agreement whereby Wire Cloth agreed to pay $28,000 in fourteen monthly installments as full payment of the debt. Reed Smith sought a security interest in the debtor's inventory. Reed Smith further alleges that despite repeated demands by Mr. Trent, Wire Cloth's president neither signed nor returned the settlement agreement, promissory note, or security agreement. On that basis, Reed Smith

prays for reinstatement of the receivership, and specific performance of the settlement agreement. On the same date, Reed Smith also moved to re-open the estate.

On April 3, 1980, a hearing was held on the Motion to Re-open, and an order was entered denying the same. The order also allowed the claim of Reed Smith as a general claim in the amount of $39,108.40. From the order allowing the claim, Wire Cloth appealed to the District Court. Among the issues raised were the jurisdiction of the bankruptcy court to determine the allowance of fees; the reasonableness of the amount charged; and the quality of services rendered.

Reed Smith filed an amended application for compensation. The debtor has moved to dismiss the claim on the basis of lack of jurisdiction.

For the reasons that follow, the Court concludes that the disputed and unliquidated claim of Reed Smith for pre-petition legal fees can most expeditiously be litigated in state court.

It is clear that the jurisdiction of the Bankruptcy Court to allow or disallow creditors' claims in a bankruptcy proceeding is exclusive of all other courts. *Prudence Realization Corp. v. Geist*, 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293 (1942). However, in its exercise of discretion, the Bankruptcy Court may conclude that it is desirable to have the litigation proceed in state court. *Ex. Parte Baldwin*, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020 (1934). Although there are certain administrative functions which cannot be delegated, "the very quintescence of exclusive jurisdiction . . . is to be able to permit the state court to try a certain issue when . . . the state court is in a better position to determine the same expeditiously." *In re American Fidelity Corp.*, 28 F.Supp. 462 (S.D.Cal.1939).

Further, § 57(d) of the Bankruptcy Act acknowledges that the Court, in its discretion, may direct the liquidation of a claim in another forum. The section provides, in pertinent part, that "an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated *in the manner* and within the time directed by the court." (emphasis added) As stated in Collier on Bankruptcy on the present issue:

(The Bankruptcy Court) in its sound discretion alone decides whether and how a claim, contingent or otherwise unliquidated at the time when the petition in bankruptcy was filed, shall be liquidated. The Bankruptcy Court has exclusive jurisdiction to direct the manner and time in which such a claim is to be liquidated and estimated as to its amount.

3 Collier on Bankruptcy, 57.15 [3.2] (14th Ed. 1977).

After careful consideration of the facts presented herein; relevant case law; and § 57(d) of the Bankruptcy Act; the Court concludes that the disputed claim for pre-petition legal fees incurred during state court proceedings should most appropriately be litigated in the state court.