[Crim. No. 1764. First Appellate District, Division One.—November 23, 1933.]

In the Matter of the Application of BETTY SARGEN for a Writ of Habeas Corpus on Behalf of BERNARD SARGEN.

404

Harold Judson for Petitioner.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

KNIGHT, J.—This proceeding in *habeas corpus* was instituted on behalf of Bernard Sargen, a prisoner in the state prison at San Quentin, under commitment for felony from the Superior Court in and for Los Angeles County, it being contended as ground for discharge that said commitment was nullified by proceedings had in the trial court after the prisoner had been delivered into the custody of the warden of said state prison.

The following are the facts: Sargen was charged by information with having violated section 538 of the Penal Code. He was at all times represented by an attorney, and on August 8, 1932, entered a plea of guilty and applied for probation. On August 31, 1932, he was arraigned for judgment, at which time his attorney asked permission to withdraw from the case, and that a continuance be granted so as to enable Sargen to secure other counsel. In making such request the attorney stated that contrary to his advice Sargen insisted on making an application to withdraw his plea of guilty, plead not guilty, and stand trial. The request for permission to withdraw from the case and for a continuance was denied, the court stating that Sargen had entered his plea of guilty after having already obtained one continuance from July 15, 1932, until August 8, 1932, for such purpose. The court then imposed a penitentiary sentence and learning that Sargen had been charged with crime in that county on two previous occasions denied his application for probation. The commitment was issued and delivered to the sheriff; and on the night of September 7, 1932, Sargen was transported to the state prison at San Quentin

and the following day delivered into the custody of the warden of said prison. In the meantime Sargen secured his present counsel and on September 7th, the day Sargen was taken to San Quentin, a notice of motion was filed to vacate and set aside the judgment of conviction upon the ground that at the time Sargen entered his plea of guilty he did not understand that even though probation were granted he would still stand convicted of a felony. Contrary to the allegations in the petition for this writ, however, no order was ever made staying the execution of the judgment of sentence; consequently the sheriff executed the commitment by delivering the prisoner into the custody of the warden. The motion to vacate the judgment was noticed for September 8th, and after being partially heard was continued until September 21, 1932. Between those dates counsel for Sargen obtained a court order under the authority of section 1333 of the Penal Code for the temporary removal of Sargen from the state prison to Los Angeles County for the purpose of having him testify as a witness at the hearing of said motion; and in obedience to said order the warden surrendered Sargen into the custody of said sheriff to be by him taken back to Los Angeles for such purpose, and thereupon as commanded in said code section to be returned to said state prison. On September 21, 1932, the motion to set aside the judgment of conviction was heard and granted, following which Sargen was allowed to withdraw his plea of guilty and enter a plea of not guilty; and waiving a trial by jury he was tried by the court on the transcript of the testimony taken at the preliminary examination, found guilty, and again sentenced to imprisonment in the state prison. He applied for probation immediately; the application was heard on the report of the probation officer theretofore filed, and granted. The execution of the penitentiary sentence was suspended for a period of ten years, on condition that Sargen pay the party defrauded $240 and serve a year in the Los Angeles County jail; and complying with said condition Sargen was confined in the county jail until June 20, 1933, and then ordered released into the custody of the probation officer. The district attorney's office participated in all of the foregoing proceedings and took no appeal therefrom, although subdivision 5 of section 1238 of the Penal Code provides for an appeal by the people from

any order made after judgment affecting the substantial rights of the people. The warden, however, was never advised of any of the trial court proceedings which took place after he turned over the custody of the prisoner to the sheriff in obedience to said order of temporary removal, and after waiting several months for the prisoner to be returned as required by said code section and said order the warden learned through correspondence that the prisoner had been released on probation. Whereupon and on July 3, 1933, acting under the advice of the attorney-general, the warden apprehended the prisoner in Los Angeles under the authority of the original commitment and returned him to the state prison.

The position taken by the attorney-general is that the trial court's order purporting to vacate and set aside the judgment of conviction is void for the reason that when it issued the commitment and the prisoner was delivered at the penitentiary in execution thereof it lost jurisdiction of the prisoner and the subject matter of the case; and that therefore, the order being void, the commitment theretofore issued at all times remained in full force and effect. ■ It has been held in several cases, however, that a trial court has jurisdiction to entertain and under exceptional conditions may grant a motion in the nature of an application for a writ of *coram nobis* to set aside a judgment of conviction on the ground of extrinsic fraud (*People* v. *Reid,* 195 Cal. 249 [232 Pac. 457, 36 A. L. R. 1435], *People* v. *Perez,* 9 Cal. App. 265 [98 Pac. 870], *People* v. *Mooney,* 178 Cal. 525 [174 Pac. 325], and *People* v. *Schwarz,* 201 Cal. 309 [257 Pac. 71, 73]), and it appears from those cases that such relief is available and under the conditions there stated may be granted even though the prisoner has been committed to and is actually confined in the penitentiary, and whether the judgment of conviction be based on a plea of not guilty and a trial on the merits (*People* v. *Reid, supra; People* v. *Mooney, supra*), or, in cases such as we have here, on a plea of guilty without a trial on the merits (*People* v. *Perez, supra; People* v. *Schwarz, supra*). With respect to this latter class the Supreme Court in the Schwarz case has declared: "It may be stated from the above authorities [citing *People* v. *Perez, supra; People* v. *Mooney, supra; People* v. *Reid, supra*] that it is now well settled in this

state that where on account of duress, fraud, or other fact overreaching the free will and judgment of a defendant he is deprived of the right of a trial on the merits, the court in which he was sentenced may after judgment and after the time for appeal has passed, if a properly supported motion is seasonably made, grant him the privilege of withdrawing his plea of guilty and of reassuming the situation occupied by him before a plea of any kind was entered. It should be noted, however, that where statutory remedies are provided this method of relief may not be resorted to, and that this exceptional remedy applies only where no trial has been had on the merits and only upon a strong and convincing showing of the deprivation of legal rights by extrinsic causes.'' ■ We are of the opinion, therefore, that there is no merit in the attorney-general's contention that a trial court is divested of jurisdiction to hear and determine a motion to set aside a judgment of conviction on the grounds mentioned merely because a commitment has theretofore issued and the prisoner is confined in the penitentiary in execution thereof.

The group of cases relied on by the attorney-general (*In re Bost,* 214 Cal. 150 [4 Pac. (2d) 534, 536], *In re Sullivan,* 3 Cal. App. 193 [84 Pac. 781], *People* v. *Conley,* 27 Cal. App. 362 [150 Pac. 412], and *In re Garrity,* 97 Cal. App. 372 [275 Pac. 480]) are not in point for the reason that they deal with a proposition entirely different from the one here presented, namely, the question of the inherent power of a trial court to alter, modify or vacate a penitentiary sentence, after having issued a commitment in pursuance of such sentence and caused the defendant to be delivered at the penitentiary in execution of the commitment; and it is held that the trial court has no such power. In none of those cases was any attempt made, as here, to disturb the judgment of conviction; nor were any of those proceedings founded on claims of duress or extrinsic fraud.

■ The attorney-general further contends, however, that the facts averred in the affidavits attached to the notice of motion were legally insufficient to constitute duress or extrinsic fraud, and that, therefore, in any event, the trial court was without jurisdiction to entertain the motion. The record before us does not disclose whether or not additional evidence was introduced at the hearing of the motion; nor

does the order itself or the record show the particular ground upon which the order was granted; and in that state of the case, all intendments being taken in support of the trial court's action, and the burden being on the state to show otherwise, it must be presumed, in this proceeding at least, that additional evidence was introduced and that it is legally sufficient to support the order. ■ But aside from the question of the application of such presumption, since, as we have seen, the trial court had jurisdiction to hear such a motion, the order it made in deciding the same is not void, even assuming, as the attorney-general contends and as we are inclined to believe, that the facts averred in the affidavits and those adduced at the hearing of the motion, were legally insufficient to. warrant the court in granting the relief sought. Its action in the matter amounted to no more than an error committed in the exercise of jurisdiction, which was remediable by an appeal and not subject to collateral attack. ■ In other words, as pointed out in California Jurisprudence (vol. 7, p. 590), it is held generally that the main test of jurisdiction in any particular matter is whether or not jurisdiction is given the court as to that matter; that jurisdiction necessarily involves power to decide incorrectly as well as correctly a controversy within that jurisdiction, and does not depend upon the rightfulness of the decision made; that the rule simply means that when a court has jurisdiction of the subject matter and commits error in the final decision, such error is correctable not through collateral attack, but solely by appeal. ■ And with respect to the legal sufficiency of the moving papers, as said in Ruling Case Law (vol. 7, p. 1030), it is incorrect to suppose that power to decide any case rests solely on the averments of the pleading, but, on the contrary, the jurisdiction of a court in no way depends on the sufficiency or insufficiency of pleadings. If, therefore, the pleadings state a case belonging to a general class over which the authority of the court extends, jurisdiction attaches and the lower court has power to hear and determine the issues involved. In this respect an order made after final judgment doubtless stands on the same footing as a judgment; and the law is well settled that if a complaint shows a subject matter and a demand for relief within the jurisdiction of the court,

the mere fact that it fails to state a cause of action does not render the judgment void and subject to indirect or collateral attack. The sufficiency of the pleadings is one of the matters which the court has jurisdiction to hear and determine and the action with reference thereto, though erroneous, is not void. (15 Cal. Jur. 86; *Trans-Pacific T. Co.* v. *Patsy F. & R. Co.*, 189 Cal. 509 [209 Pac. 357], *Kelsey* v. *Miller*, 203 Cal. 61 [263 Pac. 200], and *Brush* v. *Smith*, 141 Cal. 466 [75 Pac. 55].) It has been held in the nature of a qualification to the general rule that where a court, even of general jurisdiction, is exercising a limited statutory power, and a statute conferring such power declares that it may be exercised upon the presentation of a petition stating certain facts, the failure to allege such facts is fatal to the jurisdiction of the court and renders its judgments and orders in the proceeding void, even on collateral attack. (*Matter of Hughes*, 159 Cal. 360 [113 Pac. 684].) But the proceeding here is not one involving the exercise of a limited statutory power. It is our conclusion, therefore, that the trial court's order setting aside the judgment of conviction, however erroneous it may have been, was not void and therefore not subject to collateral attack; that if erroneous the remedy for its correction was by way of appeal, which, as stated, the people failed to take.

We are of the opinion, also, however, that when, as here, a prisoner is delivered into the custody of the warden of the state prison in pursuance of a commitment for felony, such commitment, so far as the warden is concerned, remains in full force and effect until he is notified officially otherwise by service upon him of some authentic document issued by competent legal authority showing that such commitment has been either vacated or nullified. And in the present case it is not alleged or claimed that any document of any kind was ever served upon the warden showing the nature or result of the trial court proceedings had subsequent to the issuance of the order for the temporary removal of the prisoner. As already stated, Sargen was delivered into the custody of the warden by the sheriff under a commitment embodying a certified copy of a judgment which ordered and adjudged that Sargen "be punished by imprisonment in the State Prison of the State

of California at San Quentin for the term prescribed by law"; and section 1168 of the Penal Code provides that it shall be the duty of the warden to receive a person so sentenced and to imprison him "until [such person is] duly released as provided for in this act". The section then goes on to provide for the release of the prisoner at the expiration of the term fixed by the prison board, or sooner on parole, commutation of sentence, or pardon; and there are other code provisions prescribing procedure for the release of a prisoner after reversal on appeal. But manifestly, the order issued by the trial court under the authority of section 1333 did not purport to affect the terms of the commitment theretofore issued, nor can it be given any such effect. As indicated, that section provides merely for the granting of an order for the "temporary removal" of the prisoner from the state prison, and "for his production" as a witness in the trial court in a criminal proceeding; and it further provides that in executing such an order it shall be the duty of the sheriff "to bring the prisoner before the proper court . . . , to safely keep him, and when he is no longer required as a witness, to return him to the prison . . . whence he was taken". As said by the Supreme Court in *In re Bost, supra:* "The custody of the prisoner by the sheriff under this section must necessarily be temporary, qualified by and limited to the purposes of said section. The jurisdiction of the superior court over the prisoner would likewise be so limited." ■ And where, as here, a prisoner is temporarily removed from the custody of the warden to appear as a witness in a criminal proceeding in the trial court there is no law requiring the warden to attend the hearing of such proceeding in order to ascertain the nature or result of it; nor is he charged with constructive notice of what is being done there, if he does not attend. ■ If, therefore, any order be made in such or any other proceeding, purporting to affect the terms of the commitment theretofore issued, the order so made or a certified copy thereof must be served upon the warden; otherwise under the provisions of said section 1168 of the Penal Code it is his duty to enforce the mandate of imprisonment directed by the judgment of sentence embodied in said commitment.

It is ordered, therefore, that when such an order is served upon the warden, the prisoner is entitled to be released.

Tyler, P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 21, 1933.