[Crim. No. 2292. First Dist., Div. Two. Mar. 31, 1944.]

THE PEOPLE, Respondent, v. MARVIN O'MALLEY, Appellant.

Sol A. Abrams for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

SPENCE, J.—This is an appeal by defendant from an order denying his petition for a writ of error *coram nobis* and denying his motion to vacate the judgment of conviction.

On March 30, 1942, defendant was sentenced to imprisonment in San Quentin upon his plea of guilty to the charge of grand theft. His above mentioned petition and motion were not filed until September, 1943. Affidavits of defendant and others were filed therewith. Defendant claimed among other things that he had entered his plea of guilty by reason of "threats, coercion, misstatements, misrepresentations, wrongful persuasion, duress and intimidations of Inspector John Cannon and Assistant District Attorney Harmon Skillin" and that defendant had thereby been deprived of his right to a trial by jury. The trial court held a hearing at which both the inspector and the assistant district attorney were sworn and examined. The trial court denied defendant's petition and motion, whereupon defendant took this appeal.

Defendant states his contentions on this appeal as follows, first, "Writ of coram nobis is proper procedure in this case," and second, "Petition uncontroverted — insufficient

counter showing." In support of his first contention, defendant cites and relies upon *People* v. *Reid,* 195 Cal. 249 [232 P. 457, 36 A.L.R. 1435]; *People* v. *Mooney,* 178 Cal. 525 [174 P. 325]; *People* v. *Butterfield,* 37 Cal.App.2d 140 [99 P.2d 310]; *In re Sargen,* 135 Cal.App. 402 [27 P.2d 407] and other authorities dealing with the nature of the writ of error *coram nobis* and the relationship of a petition for such writ to a motion to vacate a judgment of conviction. Respondent does not question the right of a defendant to obtain relief through such proceedings upon a proper showing, but respondent points out that such relief may be had "only upon a strong and convincing showing of the deprivation of legal rights by extrinsic causes" (*People* v. *Schwarz,* 201 Cal. 309, 315 [267 P. 71]; see, also, *People* v. *Gourdin,* 26 Cal.App.2d 494, 496). Respondent contends that no such showing was made by defendant and that all the material allegations made in connection with petition and motion were controverted by the showing made by respondent. We believe respondent's last mentioned contention is fully sustained by the record before us and we will briefly outline the situation as presented to the trial court.

It appears that defendant is a college graduate who is not unfamiliar with legal procedure. He had previously entered a plea of guilty in 1936 to a felony charge and he testified upon his sentence in the present case that he had been released from San Quentin in 1940 "on parole to the Washington authorities" and was wanted by them at the time. He further testified at the time of sentence that he had used the name of Miller for the purpose of concealing his identity.

In the present case, Miss Caroline E. Kurlbaum, an elderly woman, filed a complaint against defendant in February 1942, charging him under the name of E. R. Miller. It was alleged therein that defendant had committed the crime of grand theft in that on or about January 29, 1941, defendant had unlawfully taken certain of her personal property consisting of two bonds, therein described, of the value of $875. Defendant was represented by the public defender throughout the proceedings in the municipal and superior courts of San Francisco. In the municipal court, defendant waived preliminary examination and he was held to answer to the superior court on the charge of grand theft. An information charging that offense was filed by the district at-

torney and, upon arraignment, defendant entered a plea of not guilty. On March 30, 1942, defendant asked permission to withdraw his plea of not guilty and to enter a plea of guilty. This permission was granted, and, after defendant entered his plea of guilty, his counsel waived time for sentence and stated that there was no legal cause why sentence should not be pronounced. Inspector Cannon then testified concerning the offense which consisted of taking the bonds from Miss Kurlbaum upon the representation that he would get her $875 for them and thereafter selling the bonds and failing to turn over any money to her. After sentence had been pronounced, defendant answered the customary questions asked of persons sentenced to imprisonment in the state prison. On January 16, 1943, defendant wrote to the assistant district attorney. He stated in his letter that he would soon appear before the parole board and that he "would appreciate what help you may feel free to give me." Defendant asked for a recommendation from the assistant district attorney to the parole board that he "be released to the Washington authorities at the expiration of my minimum" and also asked that the matter be called to the attention of the trial judge for his consideration. He further wrote that upon entering the state prison, he had stated that the bonds in question had a value of $256.50, "this being the market value and the price for which I sold them"; that he had been informed that the records showed a value of $875; that "This is an error, and so that my statement does not go against me as a falsehood or an attempt to mislead the board, I would appreciate it if you could write the clerk of the board, Mr. Noon, and state the actual value of these securities." In this letter, written almost a year after sentence, no mention was made by defendant of the claims subsequently made in support of his petition and motion.

The petition and motion, together with the several supporting affidavits, present a variety of claims. Preliminarily it may be stated that it subsequently appeared upon the hearing that the offense had been committed on or about January 29, 1942 and not on January 29, 1941 as set forth in the information. In support of his claims, defendant filed his affidavit and the affidavits of others attempting to establish an alibi and his innocence of any offense. He and his witnesses swore that defendant had not been in San Francisco

on January 29, 1941. Defendant swore that he had been in Seattle during the entire year of 1941; that he had never at any time taken any property from Miss Kurlbaum; that he had never met her; that he had never been in her presence; that he had never entered into any transaction of any kind with her; and that he had never been known by or used the name of E. R. Miller at any time.

In other portions of defendant's lengthy affidavit, he made entirely inconsistent claims in swearing to what he termed the "true facts, namely, that affiant had taken a single bond on two different occasions, each bond being of the value of $126.75." Upon the basis of these alleged facts supported only by defendant's affidavit, defendant claimed that he had not committed the offense of grand theft as charged but only petty theft (see Pen. Code, §§ 487, 488) and that when he pleaded guilty he "believed he was being charged with an entirely different offense which involved the theft of property under the value of $200, which constituted the crime of petty theft."

In addition to the foregoing claims defendant alleged in his petition that he "was forced into and induced to change his plea of not guilty to a plea of guilty solely because and by reason and as a result of threats, coercion, misstatements, misrepresentations, wrongful persuasions, duress and intimidations of Police Inspector John Cannon and Assistant District Attorney Harmon Skillin." While defendant sought to support this claim by the facts alleged in his affidavit, all material facts so alleged were controverted by the testimony produced by respondent. Defendant's contention to the contrary is not sustained by the record. Furthermore, there were other considerations which cast serious doubt upon all the claims made by defendant. We have mentioned above the obvious inconsistency found in the various claims made in the same affidavit. We might further mention defendant's failure to discuss any of said claims with the public defender and his failure to mention any of said claims in his letter written to the assistant district attorney almost a year after his conviction. As there was a conflict in the evidence before the trial court, we conclude that the trial court was entirely justified in resolving that conflict against defendant and in determining that defendant had wholly failed to make the "strong and convincing showing" which was required.

The order denying defendant's petition for a writ of error *coram nobis* and denying defendant's motion to vacate the judgment of conviction is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.