Filed 7/22/24  Ewing v. County of Los Angeles CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHRISTOPHER EWING, | B321762 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV46286) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Law Office of Raphael Hedwat, George E. Akwo; Bitton & Associates and Ophir J. Bitton for Plaintiff and Appellant.

Collins + Collins, Tomas A. Guterres, Chandler A. Parker, and James C. Jardin for Defendant and Respondent.

This appeal arises from the dismissal of a civil complaint in which plaintiff and appellant Christopher Ewing asserted causes of action arising from his alleged over-detention by defendant and respondent Los Angeles County. Ewing was convicted of robbery in 2004 and sentenced to a third strike prison term of 25 years to life. In 2019, the Court of Appeal granted Ewing's petition for writ of habeas corpus and remanded the matter to the trial court with directions to vacate its finding that Ewing suffered two prior strike convictions and resentence him accordingly.

Ewing was transported from prison in San Luis Obispo to Los Angeles County for the resentencing. He spent several days in the Los Angeles County Men's Central Jail (jail) prior to the hearing, and he was transported back to the jail after being resentenced to an effective term of time served. Ewing alleges he repeatedly told jail staff he should be released immediately, but they responded with intimidation and threats of violence. Ewing was released a few days later, after state prison officials notified the County of his new sentence and release date. Ewing later sued the County, asserting numerous causes of action arising out of his alleged overdetention and false imprisonment.[1]

The County filed a demurrer to the operative first amended complaint (FAC), arguing that it had various forms of statutory immunity and that Ewing otherwise did not state a claim. The

[1]     Ewing also asserted causes of action arising out of the County's alleged failure to properly investigate and prosecute his prior strike convictions, and his appellate counsel's failure to properly appeal them. The trial court granted the County's special motion to strike those allegations under Code of Civil Procedure section 425.16, and a different panel of this court affirmed that ruling on appeal. (*Ewing v. County of Los Angeles* (Apr. 25, 2023, B314722) [nonpub. opn.].)

trial court sustained the demurrer with leave to amend and dismissed the complaint without prejudice after Ewing failed to amend it. Ewing appealed.

We affirm. One of the immunity provisions relied upon by the County, Government Code section 844.6, subdivision (a) (section 844.6), provides that a public entity generally is not liable for "[a]n injury to any prisoner." Because Ewing was a "prisoner" for purposes of section 844.6, the County is immune from his claims. To the extent some of the claims may lie beyond the scope of this immunity, the FAC does not adequately state a claim for relief.

## FACTUAL BACKGROUND

In the FAC, Ewing alleged the following relevant facts, which we accept as true for the purpose of reviewing the ruling on the County's demurrer.

Ewing was convicted of robbery in 2004. After his jury trial, the court held a bench trial on allegations that Ewing suffered two prior convictions in Colorado that qualified as serious or violent felonies under the Three Strikes law. The court found the prior convictions qualified as strikes and sentenced Ewing to a third strike sentence of 25 years to life. Ewing appealed, but his appointed counsel refused his requests to argue that the evidence was insufficient to support the finding that his prior convictions were strike offenses. Ewing's conviction and sentence were affirmed on appeal, and the Supreme Court denied review.

Ewing subsequently "filed multiple habeas petitions arguing, among other things, that his prior CO convictions were not serious felonies under CA law and that his appellate counsel

. . . was ineffective in failing to raise that argument."
Eventually, the California Supreme Court "agreed to take up his
petition" and "ordered the CA Court of Appeal to consider"
Ewing's claims.[2]  On October 2, 2019, Division Five of this district
concluded that insufficient evidence supported the trial court's
finding that Ewing's prior convictions qualified as strikes, and his
appellate counsel rendered ineffective assistance by failing to
raise an argument to that effect.  Division Five remanded the
matter to the trial court with directions to vacate its finding that
Ewing suffered two prior strikes and resentence him accordingly.

The trial court scheduled Ewing's resentencing hearing for
December 9, 2019.  On December 2, 2019, Ewing was transferred
from the state prison in San Luis Obispo to the jail in Los
Angeles.  On December 9, 2019, county sheriff's deputies
transported Ewing from the jail to the trial court in Van Nuys.
The trial court resentenced Ewing, gave him credit for time
served, placed him on parole, and instructed him to report to the

---

[2]     According to the Court of Appeal opinion attached to the
FAC, the Supreme Court issued an order to show cause "as to
'why petitioner is not entitled to relief pursuant to [*People v.
Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*)], and why *Gallardo*
should not apply retroactively on habeas corpus to final
judgments of conviction, or in the alternative, why appellate
counsel did not render ineffective assistance in failing to
challenge on appeal the sufficiency of the evidence to support a
finding that petitioner's prior Colorado robbery convictions
qualified as serious felonies.'" (*In re Ewing* (Oct. 2, 2019,
B297362) [nonpub. opn.].)

parole office upon release.[3]  Sheriff's deputies then transported Ewing back to the jail.

When Ewing arrived at the jail, deputies removed his handcuffs "and, rather than sit him down and process him for immediate release, they sent him back upstairs to the jail inmate housing Unit, telling him he 'would be told about being released' promptly." Ewing told a deputy upstairs that "all he needed was to go get his stuff and be released consistent with the Court's order," but the deputy told Ewing "to head to his cell to wait and he will be called to be released." Ewing did as he was told, but "nothing happened." Later that day, another jail inmate to whom Ewing refers as "the House Mouth" "took it upon himself to approach COLA[4] jail Sheriff Deputies that [*sic*] Ewing needed to be released and should not be there." The deputies "did not release Ewing and instead threatened him with violence when he asked again to be released." Ewing "had no choice but to keep his mouth shut," and he spent the night of December 9, 2019 in the jail.

---

[3]  Ewing did not allege specific details about the resentencing hearing or his new sentence. According to the minute order documenting the resentencing hearing, which the County attached to the demurrer and of which we take judicial notice with the agreement of the parties, the trial court vacated the finding that Ewing's prior convictions qualified as strikes; denied probation; sentenced Ewing to the upper term of five years for the robbery; awarded him 6,107 actual days of custody credit; ordered Ewing to pay $16,700 in victim restitution; and ordered him to "report to the parole office within 48 hours after release from custody."

[4]  Ewing uses the acronym "COLA" to refer to the County.

The following day, Ewing and the House Mouth again asked the deputies to release Ewing. "They again refused, and again threatened Ewing with violence and intimidated and coerced his silence." Over the next few days, Ewing remained housed in the general population instead of the disabled inmate housing unit he had requested due to his use of a cane. Ewing had to sleep in a bed in which another inmate had been stabbed the day before Ewing's arrival, and he "was constantly afraid for his life as he was housed in a cell where inmates were stabbed, beaten up, and fights were rampant." Other inmates threatened Ewing with violence because he disrupted their sleep due to "uncontrollable shaking bouts" he suffered during the night. Ewing also "was constantly cold, and stressed about the then unfolding new pandemic called Coronavirus he had started hearing about," and "inmates around him had the flu, coughed incessantly and were getting sick."

On December 10 and 11, 2019, Ewing "started calling attorneys' [sic] from the famed Innocence Project who had been helping him with his successful appeal, to help him secure his release from COLA's jail facilities." On December 13, 2019, "around noon, Innocence Project Attorneys' [sic] and some of their law student staff descended on COLA's Jail screaming and threatening a lawsuit if Ewing was not released immediately." At 10:31 a.m. that same day, "CA prison officials notified COLA to in essence release Ewing since December 13, 2019 was his release date."[5] This notification was made despite "no

---

[5]  The County attached this notification to the demurrer. It states, "Please drop our CDCR [California Department of Corrections and Rehabilitation] hold on subject listed above . . . as his release date is 12/13/2019."

6

documented evidence . . . as to any communication between CA and COLA employees about Ewing's release at all prior to December 13, 2019, even though, Ewing and others were, on a daily basis, pled with, begged and asked COLA's Jail Deputies to effectuate his release."

Ewing was released later that day, at 6:00 p.m., "to the streets of Los Angeles into the darkness," with "no money or any assistance whatsoever" and "nowhere to turn." He suffered stress and anxiety as a result.

## PROCEDURAL HISTORY

### I.    FAC

On December 3, 2020, Ewing filed a complaint against the County, former Los Angeles County Sheriff Alex Villanueva, former Los Angeles County District Attorney Steve Cooley, two former deputy district attorneys, his appellate counsel, and 25 Doe defendants. He filed the operative FAC against the same defendants on March 26, 2021, identifying Doe 1 as the State of California. In the FAC, Ewing alleged 11 causes of action against the various defendants: (1) violation of civil rights under the California Constitution and the Bane Act, Civil Code section 52.1 against all defendants; (2) liability under 42 U.S.C. section 1983 (section 1983) against unnamed sheriff's deputies sued as Doe defendants; (3) liability under section 1983 pursuant to *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 (*Monell*)[6] against the County; (4) false imprisonment against all

---

[6]    *Monell* holds that a municipal or county entity cannot be held liable under section 1983 on a respondeat superior theory. (*Monell, supra*, 436 U.S. at p. 691.) However, "[l]ocal governing bodies . . . can be sued directly under § 1983 [where] the action

7

defendants except appellate counsel, relating to the delay in his release; (5) breach of duty to release Ewing against the County and the State; (6) false imprisonment based on an illegal sentence against all defendants except appellate counsel; (7) negligent handling of a legal matter against appellate counsel; (8) intentional infliction of emotional distress against all individual defendants; (9) negligence against all defendants; and (10) declaratory and injunctive relief against the County and the State; and (11) unfair business practices under Business and Professions Code section 17200 against appellate counsel.  Ewing prayed for general damages, special damages, punitive damages, attorney fees, penalties, costs, and other relief.

## II.    Demurrer

As relevant here, the County filed a demurrer to the FAC as it related to Ewing's alleged overdetention, specifically to the causes of action for (1) violation of civil rights; (3) *Monell* liability under section 1983; (4) false imprisonment relating to the delay in Ewing's processing/release; (5) breach of duty to release Ewing; (6) false imprisonment, again relating to the delay in Ewing's release; (9) negligence; and (10) injunctive relief.  The County invoked three statutory immunity provisions: section 844.6; Government Code section 845.8, which immunizes public entities from liability for "[a]ny injury resulting from determining whether to parole or release a prisoner" (Gov. Code, § 845.8, subd. (a)); and Government Code section 820.6, which provides, "If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional,

---

that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (*Id.* at p. 690.)

8

invalid, or inapplicable, he is not liable for any injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable." The County also claimed state agent immunity from *Monell* liability, arguing that the sheriff acts as a state official rather than a county official when setting policies governing the release of prisoners.

The County further argued that Ewing could not state a claim for various reasons, including the County's lack of legal duty to Ewing. The County pointed to California Code of Regulations, title 15, section 3371.1, subdivision (e)(2) (regulation 3371.1) which provides that when "an abstract of judgment, amended abstract of judgment, or other court order is received for an inmate who has been incarcerated by the [CDCR] for at least five business days and it is determined that the inmate is immediately eligible for release within the following five business days, he or she shall be released no later than five business days after receipt of the abstract of judgment, amended abstract of judgment, or court order." The County attached to the demurrer a clerk's certificate of mailing, dated December 9, 2019, which stated that the minute order from the resentencing hearing was mailed to the California Men's Colony on December 9, 2019. As noted above, it also attached the notification the CDCR sent to the County on December 13, 2019, stating that Ewing's release date was December 13, 2019.

The County also attached several other documents, including an "Inmate Removal Order," a "Notice of Detainer (Placed by CDCR)," and a "Voluntary Delayed Release" form. The County did not request judicial notice of these documents here or below, but both parties discussed them in the briefing and

9

agreed at oral argument that this court could take judicial notice of all the documents attached to the demurrer, which we do. We accordingly note that the court-issued Inmate Removal Order ordered the warden of the California Men's Colony in San Luis Obispo to "deliver [Ewing] to the Sheriff of Los Angeles County" for the December 9, 2019 resentencing hearing, and ordered the sheriff to "execute this order by receiving [Ewing] into your custody and causing [Ewing] to appear in the Superior Court at the time and place indicated above, and thereafter return [Ewing] back into the custody of the Warden or Director of the above-named institution when his or her presence is no longer required by the Court." We further note that the Notice of Detainer directed the sheriff, in bold, capital letters, "DO NOT RELEASE BEFORE CALLING" the state prison in San Luis Obispo. The Voluntary Release form is dated December 13, 2019 and bears the signatures of Ewing and a jail employee. It advised that "all inmates/arrestees have the right to remain in custody up to 16 hours or until normal business hours, whichever is shorter, in order to be discharged to a treatment center or to be released from jail during business hours. Normal business hours are between 0700 hours – 1700 hours." The listed reasons an inmate could choose to delay release included "Do not want to be released during nighttime hours," "Unable to access basic reentry services," "Transportation arrangements," and "Homeless shelter intake hours." A box is checked next to the statement, "No, I do not want to participate in the Voluntary Delayed Release Program and want to be released as soon as possible."

III. **Opposition and Reply**

Ewing filed a written opposition to the demurrer. He contended that section 844.6 was inapplicable because

subdivision (d) provides that "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission," and the County was vicariously liable for the acts of its employees. Ewing argued that Government Code section 845.8 was inapplicable because the County claimed that it had no authority to release Ewing without clearance from the state, regulations cited by the County did not apply, and the County had a statutory duty to consider his best interests when making release decisions. He further argued there was no immunity for his Bane Act claim, which was adequately alleged; his negligence claims survived because "there exists 'a special relationship between jailer and prisoner'"; his *Monell* claim was properly predicated on the County's "policy of inaction"; the County had a ministerial duty to release him and had no immunity from his false imprisonment claims; and the "case is replete with controversial issues" warranting declaratory and injunctive relief.

In its reply, the County contended that Ewing's failure to dispute that he was a "prisoner" at the time of his alleged injuries was "fatal" to his state law claims because it brought his claims squarely within section 844.6. It further argued that it did not breach any statutes, that any duty to protect Ewing was separate from a duty to release him, and that it was a state actor for *Monell* purposes because Ewing remained in the constructive custody of the state at all relevant times.

## IV.   Hearing and Ruling

The trial court heard the demurrer on October 13, 2021. No court reporter was present for the hearing. The court, "having read and considered the moving and opposing papers" and hearing the parties' oral arguments, sustained the demurrer. In

11

the minute order documenting the hearing, the court stated, "The County demurs to all causes of action on sufficiency grounds. [¶] Government Code Section 845.8. Broadly [*sic*] construed to immunize public entities and public employees from "Any injury resulting from determining whether to . . . release a prisoner or from determining the terms and conditions of his . . . release. . ." [¶] The FAC fails to allege what the County did to the plaintiff and how this violated any statute (as there is no common law tort liability for public entities in California). [¶] The demurrer is sustained with 10 days leave to amend."

Ewing did not amend the FAC. The County subsequently moved for entry of judgment of dismissal pursuant to Code of Civil Procedure section 581, subdivision (f)(2) and California Rules of Court, rule 3.1320(h). Ewing did not oppose the request or appear at the scheduled hearing, which also had no court reporter present. The trial court granted the request and ordered the FAC dismissed on January 28, 2022 in an unsigned minute order. Ewing appealed.[7]

---

[7] Although Ewing purports to appeal from a judgment of dismissal, it does not appear that any such judgment was filed or entered. Indeed, Ewing attached the unsigned minute order dated January 28, 2022 to his civil case information statement. That order is not an appealable judgment of dismissal. (See Code Civ. Proc., §§ 581d, 904.1; *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577-1578.) However, "[t]he fact that no judgment of dismissal was entered on the order sustaining the demurrer does not present an insurmountable obstacle to the appeal." (*Shepardson v. McLellan* (1963) 59 Cal.2d 83, 88.) "[W]hen the trial court has sustained a demurrer to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that is left to

**DISCUSSION**

## I.    Standard of Review

"On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439.) We read the operative complaint as a whole, contextualizing its parts and giving it a reasonable interpretation. (*Ibid.*) We treat the demurrer as admitting all properly pleaded material facts, however improbable they may be, but we do not assume the truth of any contentions, deductions, or conclusions of law. (*Id.* at pp. 439-440; *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.) We also require every fact material to the existence of statutory liability to be pled with particularity, because all governmental tort liability is based on statute. (*City of Los Angeles v. Superior Court* (2021) 62 Cal.App.5th 129, 138.) In addition to the facts pled, we consider matters which may be judicially noticed. (*Mathews v. Becera* (2019) 8 Cal.5th 756, 768.)

---

make the order appealable is the formality of the entry of a dismissal order or judgment." (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396 (*Sisemore*); see also *Estate of Dito* (2011) 198 Cal.App.4th 791, 799-800 ["where it is clear the court intended to entirely dispose of the action, we are empowered to amend the order to make it an appealable judgment of dismissal"].) Here, the January 28, 2022 minute order effectively ended Ewing's ability to proceed with his claims against the County. "The only step left to make the order appealable was the formal entry of a dismissal order or judgment. We will accordingly deem the [January 28, 2022 order dismissing the FAC] to incorporate a judgment of dismissal and will review the order." (*Sisemore,* at p. 1396.)

13

"[B]ecause we are reviewing the trial court's ruling and not its reasoning, we may affirm on any ground supported by the record regardless of whether the trial court relied upon it." (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960.) A demurrer based on an affirmative defense may be sustained where the face of the complaint discloses that the action is necessarily barred by the defense. (*Silva v. Langford* (2022) 79 Cal.App.5th 710, 716.)

## II.    Analysis

The gravamen of Ewing's claims is that Ewing should have been released from custody immediately upon his resentencing on December 9, 2019. Because the County did not release him until a few days later, Ewing contends, it falsely imprisoned him and violated his rights. The trial court correctly sustained the County's demurrer to these claims.

One of the immunity provisions invoked by the County below, section 844.6, subdivision (a)(2), provides that a public entity is not liable for "[a]n injury to any prisoner." The rationale behind this provision is that "'no tort liability should be admitted for damages sustained as the consequence of conditions which are common to all inmates and which simply represent a reasonable application of general policy determinations by responsible prison or jail authorities with respect to the administration of such institutions.'" (*Badiggo v. County of Ventura* (1989) 207 Cal.App.3d 357, 360, quoting 5 Cal. Law Revision Com. Rep. (Jan. 1963) p. 425.)

For purposes of section 844.6, "injury" means "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if

14

inflicted by a private person." (Gov. Code, § 810.8.) The term "prisoner" "includes an inmate of a prison, jail, or penal or correctional facility." (Gov. Code, § 844.) A "lawfully arrested person . . . becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes" (*ibid*.), and remains a prisoner so long as he or she is "lawfully confined as part of the penal process." (*Reed v. County of Santa Cruz* (1995) 37 Cal.App.4th 1274, 1277; see also *Lawson v. Superior Court* (2010) 180 Cal.App.4th 1372, 1386-1387 (*Lawson*).) Ewing contends he was no longer a "prisoner" once he was resentenced on December 9, 2019, and therefore section 844.6 does not apply. We disagree.

When a person is sentenced to a term of imprisonment, he or she "shall be imprisoned until duly released according to law." (Pen. Code, § 2901.) A "convicted felon once sentenced, committed, and delivered to prison is not restored to presentence status . . . by virtue of a limited appellate remand for correction of sentencing errors. Instead, he remains 'imprisoned' [citation] in the custody of the Director [of CDCR] 'until duly released according to law' [citation], even while temporarily confined away from prison to permit his appearance in the remand proceedings." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23; see also Pen. Code, § 2620 [providing that when a prisoner is temporarily removed from state prison "for the purpose of hearing a motion or other proceeding," he or she "shall remain in the constructive custody of the warden thereof"].) Thus, while Ewing was in the jail, he remained under the legal custody of the CDCR even though he was in the physical custody of the County.

The CDCR was not present at Ewing's resentencing hearing and was not required to be. "[W]here, as here, a prisoner

15

is temporarily removed from the custody of the warden to appear as a witness in a criminal proceeding in the trial court there is no law requiring the warden to attend the hearing of such proceeding in order to ascertain the nature or result of it; nor is he charged with constructive notice of what is being done there, if he does not attend." (*In re Sargen* (1933) 135 Cal.App. 402, 410 (*Sargen*).) If any order is made in such a proceeding, "purporting to affect the terms of the commitment theretofore issued, the order so made or a certified copy thereof must be served upon the warden." (*Ibid.*) This requirement is codified in Penal Code section 1213, subdivision (a), which requires a judgment or minute order for imprisonment to be "certified by the clerk of the court" and "forthwith furnished to the officer whose duty it is to execute the order or judgment." A prisoner's prior commitment "remains in full force and effect until [the warden] is notified officially otherwise by service upon him of some authentic document issued by competent legal authority showing that such commitment has either been vacated or nullified." (*Sargen, supra*, 135 Cal.App. at p. 409.) Once that notification is made, "and it is determined that the inmate is immediately eligible for release or eligible for release within the following five business days, he or she shall be released no later than five business days after receipt . . . ." (Regulation 3371.1.)

Here, Ewing was resentenced on December 9, 2019. At some point on or before December 13, 2019, the CDCR was apprised of the order, determined Ewing was eligible for release on December 13, 2019, and communicated that to the County. Ewing was released the same day, which was well within the five business days' processing time authorized by Regulation 3371.1. Ewing was lawfully confined during this time and accordingly

16

was a "prisoner" within the meaning of section 844.6. And therefore the County was immune to his claims of injury.

Ewing contends that *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710 (*Sullivan*) holds otherwise. In *Sullivan*, plaintiff Sullivan began serving a 50-day jail sentence on June 7, 1967. (*Sullivan, supra,* 12 Cal.3d at p. 713.) While he was serving that sentence, other pending charges against him were dismissed: felony charges were dismissed on July 13, 1967, and a misdemeanor charge was dismissed on July 21, 1967. The municipal court issued an order to release Sullivan immediately after it dismissed the misdemeanor charge, but the superior court had not issued a release order after it dismissed the felony charges. Sullivan completed his sentence on July 26, 1967, but the jail would not release him in the absence of a release order from the superior court. Sullivan was released on August 7, 1967, after he wrote to the superior court about the missing release order. (*Id.* at p. 714.) Sullivan later sued the County for false imprisonment, alleging that the sheriff knew or should have known there were no charges pending against him and Sullivan was entitled to release upon completion of his sentence. (*Ibid.*)

The trial court granted the County's motion for judgment on the pleadings, finding that the County had immunity under Government Code section 821.6. (*Sullivan, supra,* 12 Cal.3d at p. 715.) The Supreme Court reversed, holding that no immunity provision "insulates the county from liability for false imprisonment." (*Ibid.*) The court observed that public entities are liable under Government Code section 815.6 for injury caused by violation of a mandatory duty designed to protect against that kind of injury, and Penal Code section 1384 imposes a mandatory duty to discharge a person from custody "[i]f the court directs the

17

action to be dismissed," which "speaks precisely to this situation." (*Ibid.*) The court additionally rejected the County's reliance on section 844.6 on the ground that Sullivan was not a "prisoner." (See *id.* at pp. 716-717.) It stated that false imprisonment "is an injury to a non-prisoner which converts him into a prisoner," and "[c]ontinued confinement cannot legally make [Sullivan] a 'prisoner' when the jail term has expired." (*Id.* at p. 717.) Finally, the court "reaffirm[ed] the test for false imprisonment liability": "If the sheriff 'knew or should have known' that plaintiff's incarceration was unlawful because all charges against him had been dismissed, then the sheriff is liable for false imprisonment. The test requires either that the sheriff have actual knowledge that the imprisonment of the plaintiff is unlawful or alternatively that he have some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration." (*Id.* at p. 719.)

Sullivan is distinguishable from this case. The charges against Sullivan were dismissed, giving rise to a mandatory duty for the County to release him when he otherwise completed his sentence. (See Pen. Code, § 1384.) Ewing argues that he was "not a 'prisoner' as of the issuance of the [resentencing] decision by Judge Brandolino," but he has not pointed to any authority holding that a resentencing gives rise to a similar duty, particularly where the resentencing order does not on its face provide for immediate release. Instead, the prior commitment "remains in full force and effect until [the warden] is notified officially otherwise by service upon him of some authentic document issued by competent legal authority showing that such commitment has either been vacated or nullified." (*Sargen, supra*, 135 Cal.App. at p. 409.) Ewing has not challenged the

18

sufficiency or expedience of the court's transmission of its order to CDCR; the FAC alleges that the County released him the same day it received notice from CDCR and the Innocence Project.

Ewing suggests the County knew or should have known he was entitled to immediate release based on the comments he and the House Mouth made to jail staff. However, "mere protests by the person allegedly wrongfully jailed" do not give a jailer reason to know that the person should be released. (*Castro v. City of Hanford* (E.D. Cal. 2008) 546 F.Supp.2d 822, 829.) To be liable for false imprisonment or negligence for prolonged detention, a jailer must receive some sort of other notice, such as "a court order, independent evidence, or some other official notice," that reasonably should "cause it to investigate" the person's claim that he or she is entitled to release. (*Ibid.*) Ewing alleges the jail received such notice from state prison officials and the Innocence Project on December 13—the day he was released. Moreover, jail personnel are entitled to rely on orders and process that appear facially valid. (*Ibid.*) Here, the Inmate Removal Order directed the sheriff to return Ewing to the state prison warden, and the Notice of Detainer, to which a certified copy of Ewing's commitment was apparently attached, indicated that Ewing was a "lifer" and in bold type instructed the sheriff not to release him without calling a designated phone number. Ewing's contentions that he was entitled to release the moment the court issued its order and he told deputies about it do not remove him from the definition of "prisoner" for purposes of section 844.6.

Nor do they establish any liability for negligence. As Ewing recognizes, governmental tort liability must be based on statute. (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 179.) Government Code section 815.6 provides an exception

19

to that rule: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Gov. Code, § 815.6; *B.H. v. County of San Bernardino*, 62 Cal.4th at p. 179.) Ewing points to two statutory provisions that he asserts give rise to a mandatory duty, Penal Code sections 1213 but neither is applicable here.[8] Penal Code section 1213 is directed at the court and court clerk, not the sheriff. (See Pen. Code, § 2900.5, subd. (d) ["It is the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section. The total number of days to be credited shall be contained in the abstract of judgment provided for in Section 1213."]; *People v. Mitchell* (2001) 26 Cal.4th 181, 185-186; 35 Cal.L.Rev.Comm. Reports 219 (2007).) And, as noted earlier, Penal Code section 1384 imposes a duty to immediately release a defendant when an action is dismissed or bail is exonerated; it does not by its terms impose a similar duty where a defendant is resentenced. (See Pen. Code, § 1384.)

Ewing's reliance on *Fearon v. Department of Corrections* (1984) 162 Cal.App.3d 1254 (*Fearon*) is similarly misplaced. In

---

[8] He also points to the language in the Notice of Detainer directing the sheriff not to release him before calling the state prison, which he claims is based on Penal Code section 2620 and therefore imposes a mandatory duty on the County to call. The Notice of Detainer is not a statutory enactment, nor is it based on Penal Code section 2620, which governs removal orders.

20

*Fearon*, plaintiff Fearon alleged that when he first entered prison, "his silver belt buckle, valued by him at $200,000, was taken by prison officials for safekeeping until his release." (*Id.* at p. 1256.) When Fearon was released, prison officials told him the belt buckle had been lost. Fearon sued the state for negligent loss of property and conversion. (*Ibid.*) The trial court granted the state's motion for judgment on the pleadings, finding it was immune under section 844.6. (*Ibid.*) The Court of Appeal reversed as to the conversion count, finding that Fearon was not a "prisoner" when he demanded return of the buckle while "a parolee on the way out of prison." (*Id.* at pp. 1256-1257.) The FAC specifically alleges that Ewing "has never been on parole, never had to report to parole office or parole officer other than that first day post his release." Moreover, the bulk of Ewing's alleged injuries stem from the County's alleged refusal to release him, not its actions subsequent to his release. Any claim that Ewing was injured because he was released in the evening hours is undermined by the Voluntary Release Form.

Ewing also argues that, "[r]elease issues aside, the FAC alleges COLA employees were negligent in many other ways above and beyond their actions/inactions in Appellant's release," including ignoring his safety, threatening him with violence, and placing him in a cell for a non-disabled person "even with his obvious disability." He contends the County is not immune from liability for such conduct because Government Code, section 844.6, subdivision (d) states that "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission," and the County is vicariously liable for the wrongs of its employees.

21

To the extent this argument implicates Ewing's allegations about threats from jail staff and his Bane Act claim, it is not persuasive.  The Bane Act does not create an exception to section 844.6.  (*Towery v. State of California* (2017) 14 Cal.App.5th 226, 229.)  Moreover, "[t]he essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation, or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." (*Austin B. v. Escondido Union School District* (2007) 149 Cal.App.4th 860, 883.)  Here, Ewing alleges jail staff "threatened and intimidated [him] into silence causing him to succumb to the 5 additional days of illegal incarceration they subjected him to."  However, as explained above, Ewing was not entitled to immediate release.

The lack of entitlement to immediate release also precludes Ewing's *Monell* claim, which is entirely predicated on the County's alleged policy and custom of unreasonably delaying the release of inmates "who have been ordered released as a result of serving an excessive sentence."  State statutory immunities generally may not be asserted as a defense to a section 1983 claim.  (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1485; see also *Pitts v. County of Kern* (1998) 17 Cal.4th 340, 350 ["The availability of immunity from liability under section 1983 in state court is governed by federal, not state law"].)  Yet if a plaintiff does not suffer an underlying constitutional deprivation by a deputy or officer of a government entity, the plaintiff's *Monell* claim automatically fails.  (See *City of Los Angeles v. Heller* (1986) 475 U.S. 796, 799.)  Ewing was released once notice of his updated release date was transmitted

to the County.  Thus, he has not adequately alleged a constitutional deprivation on which to base *Monell* liability.

Ewing's claims of medical negligence are similarly deficient.  A public entity is not liable for "injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody," unless an employee "knows or has reason to know that the prisoner is in need of immediate medical care and [the employee] fails to take reasonable action to summon such medical care."  (Gov. Code, § 845.6.)  Liability under this section is limited to serious and obvious conditions requiring immediate care.  (*Lawson v. Superior Court, supra*, 180 Cal.App.4th at p. 1385.)  Placing Ewing in general housing despite his use of a cane, as described in the FAC, does not amount to neglect of a serious and obvious medical condition or a disregard of his safety.  Although Ewing alleges that "fights were rampant" in his cell, the FAC does not specifically allege that Ewing was a victim of any violence or faced threats to his safety.

## DISPOSITION

The judgment is affirmed.  The County may recover its costs of appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


CURREY, P.J.


ZUKIN, J.


23